HAMITER, Justice.
Plaintiff’s tank truck, insured by defendant against loss from collision, was damaged in an accident on November 16, 1948. The cost of making the necessary repairs was $780.46, and to recover the amount this suit was instituted on the insurance contract.
In resisting plaintiff’s demands defendant contends that the insured truck was being used in contravention of the terms of the policy.
The district court rendered judgment 'in favor of plaintiff for the amount demanded, together with legal interest and costs. Defendant appealed to the Court of Appeal, First Circuit, where the judgment was reversed and the suit dismissed. 55 So.2d 43. On plaintiff’s application we granted the writ of certiorari.
In Item 1 of the contract insuring the tank truck it is stated that G. R. Baldwin (the plaintiff herein) is the named insured; that his address is Winnsboro, Louisiana; that his occupation is wholesale distributor; and that Pan American Oil Company is his employer.
Pertinent provisions of Item 5 of the con- • tract are the following:
“Use: The purposes for which the automobile is to be used are * * * Commercial (Transports Gasoline) * * * * * *
“(b) The term ‘commercial’ is defined as use principally in the business *784 occupation of the named insured as stated in Item 1, including occasional use for personal, pleasure, family and other business purposes. * * * ”
Attached to and forming a part of the policy is a certificate, endorsement, or rider which, among other things, recites:
“Territorial Limitation
(Commercial Automobiles)
“In consideration of the premium at which this Policy is written, it is agreed that the regular and frequent use of the commercial automobiles is and will be confined during the policy period to the territory within a 50 mile radius of Winnsboro, Louisiana; that no regular or frequent trips are or will be made during the policy period to any location beyond the territorial limit shown above; that the Named Insured does not and will not during the policy period advertise or solicit the hauling of goods, materials or commodities to a location beyond the territorial limit shown above.
ij?
“Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements, or declarations of the undermentioned Policy other than as stated above.”
The record discloses that in transporting gasoline as a wholesale distributor plaintiff often violated the provisions of the territorial limitation certificate, he having so used the truck between Winnsboro and Shreveport, a distance of more than 50 miles, from five to fifteen times per month. Approximately 25% of his regular operations was without the 50 mile radius, because his source of supply was beyond that distance.
But the claim urged here did not arise out of an accident occurring during his regular operations. It arose from a collision that took place (at a point more than 50 miles from Winnsboro) during an infrequent trip of the tank truck to' a repair shop in the City of New Orleans for the purpose of being re-calibrated, the work having become necessary by reason of certain loosened lead seals. Approximately three years had elapsed since the making of a similar trip, and mechanics qualified to- perform the needed service were not to be found in a city closer than New Orleans.
It appears, and defendant apparently concedes, that collision coverage for this New Orleans trip of more than 50 miles was contemplated by the policy’s terms; the truck was then undergoing an occasional use which is provided for and authorized, as above shown, in Item 5. However, pointing to plaintiff’s admitted violations of the territorial limitation certificate respecting regular operations, counsel for defendant takes the position (which the Court of Appeal found meritorious) that “When regular and frequent trips are made outside of the limitation, then the assured forfeits his right to make occasional trips, and the cov *786 erage afforded under the policy is suspended outside the fifty (50) mile radius.”
The mentioned certificate makes reference only to the regular and frequent use of the insured vehicle, and it specifically confines that use to the territory within a 50 mile radius of Winnsboro. Consequently, any loss sustained while such limitation is being violated would not be covered.
But we find nothing in the certificate, or in any other provision of the policy, which indicates that a violation of the limitation respecting the regular and frequent use would result in a forfeiture of the right of plaintiff under the contract to recover for a loss suffered during an authorized occasional use, even when the collision occurs more than 50 miles from Winnsboro. Certainly, a forfeiture is nowhere expressly stipulated, Nor does it appear to be implied. The limitation, found only in the certificate, merely forbids regular and frequent use outside the 50 mile radius. This means, obviously, the principal use in the course of the insured’s business of transporting gasoline, as distinguished from an occasional use for other purposes for which Item 5 of the contract provides authority. And the certificate particularly recites that nothing therein contained shall be held to vary or alter any of the terms of the policy except as to the specified regular and frequent use limitation.
Moreover, no showing has been made that the regular and frequent use in transporting gasoline outside the territorial limits resulted in an increase in the hazards of a contemplated occasional trip.
Our opinion respecting the instant policy as endorsed, therefore, is that although regular and frequent trips violative of the 50 mile limitation render inoperative the coverage during such use, the violations do not relieve the insurer of its obligation to pay collision losses sustained while the insured vehicle is undergoing occasional use, this including the New Orleans trip from which the present claim arises.
Consideration has been given to the four cases from other jurisdictions cited by defense counsel and involving a territorial limitation similar to the one here (there are no cases in our jurisprudence) ; but we find them inapposite for the reason that they present entirely different factual situations and issues.
Contained in the insurance contract in question, we notice, is a clause stipulating a deduction of $50 from the actual cash value of any insured collision loss. That amount, as a consequence, must be deducted from plaintiff’s claim of $780.46.
'For the reasons assigned the judgment of the Court of Appeal is reversed and set aside; and it is now ordered that the judgment of the district court be amended by reducing the award in favor of plaintiff from $780.46 to $730.46 and that, as amended, it be reinstated and made the decree of this court. Defendant shall pay all costs.