82 So.2d 91 (1955)
Spencer KENNEDY, Plaintiff-Appellant,
v.
AUDUBON INSURANCE COMPANY and Ansel C. Zeigler, Defendants-Appellees.
No. 4058.
Court of Appeal of Louisiana, First Circuit.
June 30, 1955.
Rehearing Denied September 15, 1955.
*92 H. Alva Brumfield, Baton Rouge, for appellant.
Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, for appellees.
TATE, Judge.
Plaintiff Kennedy appeals from judgment sustaining an exception of no cause of action and dismissing his suit as to Audubon Insurance Company in its capacity as liability insurer of Ansel C. Zeigler. Kennedy was allegedly injured in an accident between a car owned and driven by Zeigler and another car, in which latter vehicle plaintiff was riding as passenger.
At the time of the accident Zeigler was a soldier in the United States Army, stationed at Camp Polk, Louisiana, in the extreme western part of Louisiana. He had purchased from defendant insurer a liability insurance policy subject to the following limiting endorsement:
"1. The insurance applies only to accidents which occur while the automobile is within boundaries of any military post, camp or cantonment.
"2. The insurance shall not be construed to comply with the motor vehicle financial responsibility law of any state or province."
The insurance policy in question was sold at greatly reduced premiums, namely $6.00 for six months coverage (annual premium, $10.00).
It is undisputed that the accident occurred on North Third Street in the City of Baton Rouge, and not on any military post, camp, or cantonment.
Appellant urges: (1) That the Louisiana Insurance Code prohibits the issuance of any insurance policy affording such limited protection to the insured and to the public; (2) that a defense based on such a limitation or exclusion of liability cannot be urged by the insurer against an injured third party, in view of prohibitory provisions in the Motor Vehicle Safety Responsibility Law, Act 52 of 1952, LSA-R.S. 32:851 et seq.
We regretfully must differ with the conclusions of able counsel for plaintiff-appellant.
*93 1. Such policy rider or limitation of coverage is not prohibited by the Louisiana Insurance Code.
Appellant bases his contention that our Louisiana Insurance Code, LSA-R.S. Title 22, prohibits such limited coverage under the provision providing that "No endorsement, rider, or other documents attached to such [insurance] contract shall vary, extend, or in any respect conflict with any such standard provision, so as to make the resulting effective provision less favorable to the insured than such standard provision." LSA-R.S. 22:623, subd. B.[1] Appellant therefore urges that the rider certainly conflicted with the provisions of a standard policy and is certainly less favorable to the insured than the standard provision, which standard policy (he alleges) provides that it is effective throughout the United States and Canada.
However, appellant overlooks that the Louisiana Insurance Code, although statutorily setting forth a standard form as to fire and certain other forms of insurance, does not require a standard form for automobile liability insurance; although pursuant to the rate regulation function provided for by the Louisiana Insurance Code, Part XXX, LSA-R.S. 1401 et seq., the Louisiana Insurance Rating Commission by regulation has compelled use of uniform policies on certain coverages in order to effectuate rate regulation.[2] The Louisiana Insurance Rating Commission did specifically authorize a policy limiting coverage to accidents which occur on military reservations.[3] Under this authorization, defendant-appellee issued and sold the policy sued upon by appellant.
"`In the absence of statutory provisions to the contrary, insurance companies *94 have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts, or to take anything from them.'" Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, at page 75, 125 A.L.R. 1075.
At least one Louisiana case construed a somewhat similar territorial limitation of liability coverage without any question as to the legality thereof being raised, Baldwin v. Tri-State Cas. Ins. Co., 221 La. 781, 60 So.2d 408, reversing this Court's decision at 55 So.2d 43.
In the absence of legislative determination that such coverage limitation is not consistent with the public policy of this State, we are unable to hold invalid the policy limitations embodied in the rider attached to the present insurance contract.
2. The Louisiana Motor Vehicle Safety Responsibility Act does not bar the insurer from using this limitation of coverage as a defense to actions by injured third persons.
Appellant further urges that the defendant insurer is unable to raise as against plaintiff, a third party, its policy defense limiting coverage to accidents on military reservations, because the Motor Vehicle Safety Responsibility Law, LSA-R.S. 32:851 et seq. specifically provides, LSA-R.S. 32:900, subd. F(1):
"Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:
"(1) The liability of the insurance carrier with respect to the insurance required by this Chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be cancelled or annulled as to such liability by an agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat, or void said policy". (Italics ours.)
An analysis of all the provisions of this Act indicates that following an accident, a driver and/or operator to avoid suspension of his driver's license and vehicle registration must: (a) post "security" within the required limits to pay any damages for which he may be cast, as a result of that accident which has already occurred, which security may be in the form of an "automobile liability policy", Part II Security Following Accident, LSA-R.S. 32:871 et seq., especially section 872, subd. C; (b) if cast in judgment subsequently which is unsatisfied, post "proof of financial responsibility" to cover his liability if involved in any future accidents for a period of three years within certain limits, which "proof of financial responsibility" may be by posting a "motor vehicle liability policy", Part III, LSA-R.S. 32:891 et seq., especially Sections 897-902. (These latter requirements of posting "proof of financial responsibility" also result when because of a criminal violation a driver's license is suspended, e. g., LSA-R.S. 32:896.) Thus, Part II, "Security Following Accident", is retrospective in application, and is limited to posting security for the benefit of persons who have been injured in an accident which has already occurred; Part III, "Proof of Financial Responsibility", is prospective in application and for protection of the general public requires those wishing to use the highways of Louisiana who by court judgment have been held liable in a previous accident which liability they have not satisfied at least within the statutory limitsto post "proof of financial responsibility" as defined by the statute before doing so. See Comment, "The Louisiana Motor Vehicle Safety Responsibility Act", 27 Tulane Law Review 341.
Thus the provision relied upon by appellant above-quoted applies not to "automobile liability policies" which may be posted as "security" pending determination of liability to others injured in an accident, but to "motor vehicle liability policies", specifically *95 defined in LSA-R.S. 32:900, subd. A as those permitted as "proof of financial responsibility" under Part III of the Act, which a court-determined tort-feasor who has not satisfied liability arising out of a previous accident must post for protection of the general public.
Until such time, no automobile driver or owner is required to carry insurance, and the above-quoted provision, LSA-R.S. 32:900, subd. F(1) indicates it applied only to "insurance required by this Chapter". (Italics ours.)
The U. S. District Court, Western District of Louisiana, reached a similar conclusion rejecting a similar contention that LSA-R.S. 32:900 barred as against third parties defenses available against the insured by the insurer issuing an ordinary automobile liability policy, New Zealand Insurance Company v. Holloway, 123 F.Supp. 642. In this able opinion, Judge Hunter (in the absence of Louisiana jurisprudence concerning the issue), reviewed the jurisprudence of States having similar statutory provisions and found: "With but one exception, every other court in this country faced with the same issue has resolved it the same way, namely: that the Motor Vehicle Liability Act has no effect unless the policy was actually required and certified under the Act." 123 F.Supp. 642, at page 647. (This one exception is New Hampshire, which we will discuss briefly below.) The Legislature has enjoined us to interpret and construe the Motor Vehicle Safety Responsibility Law so "as to effectuate its general purpose to make uniform the laws of those states which enact it", LSA-R.S. 32:857, and we are satisfied that our interpretation herein is uniform with that of the vast preponderance of our sister States.
Appellant relies very strongly upon Farm Bureau Automobile Ins. Co. v. Martin, 97 N.H. 196, 84 A.2d 823, 29 A.L.R.2d 811, which held that the New Hampshire Motor Vehicle Financial Responsibility Act prevented an insurer from raising, as against an injured third party, defenses available against its own policyholder (in this case, the policyholder's failure within 30 days to notify his insurer that he had replaced the automobile named in the policy with another one.) In the first place, it appears probable that the New Hampshire statute mandatorily requires all automotive liability policies to provide that "no violation of exclusions, conditions, other terms, or language contained in the policy * * * shall operate to defeat or avoid a policy so as to bar recovery * * thereon", Phoenix Indemnity Co. v. Conwell, 94 N.H. 146, 47 A.2d 827, 1 A.L.R.2d 819, and of course a similar statutory requirement is not here before us.
In the second place, in the case relied upon by appellant the policy in question "* * * bore a New Hampshire Statutory Motor Vehicle Liability Policy endorsement, which provided that the policy was `a Motor Vehicle Liability Policy as defined in Chapter 122, Revised Laws of the State of New Hampshire as amended, and all policy provisions required by said chapter are hereby expressly incorporated in the policy by reference.'" 97 N.H. 196, 84 A.2d 823, at page 824, 29 A.L.R.2d 811, at page 813. It would thus appear that the case relied upon is further distinguishable from the present matter before us, where here the policy specifically provided "The insurance shall not be construed to comply with the motor vehicle responsibility law of any state or province."
Appellant indicated that the last-quoted provision might render the policy limitation void as against the public policy of the State. However, until after an unsatisfied judgment results from an accident, no motorist is required to carry any insurance whatsoever. We feel the probable intention of this proviso is to prevent, after an accident, this policy being offered as the "security" required to protect those injured in the accident, failure to file which security results in suspension of the driver's license and/or owner's vehicle registration privileges; thus to aid in effectuating the purpose of the Motor Vehicle Safety Responsibility Act.
*96 For the above and foregoing reasons, the judgment of the District Court herein sustaining the exception of no cause of action as to defendant in its capacity as insurer of Zeigler is hereby affirmed. Plaintiff-appellant to pay the costs of this appeal.
Affirmed.
NOTES
[1] LSA-R.S. 22:623 provides in full:

"A. Insurance contracts shall contain such standard provisions as are required by the applicable chapters of this Code pertaining to contracts of particular kinds of insurance. The Secretary of State may waive the required use of a particular standard provision other than the provisions required in Part XV [See LSA-R.S. 691 et seq., pertaining to fire insurance] of this Chapter in a particular insurance contract form if:
"(1) He finds such provision unnecessary for the protection of the insured, and inconsistent with the purposes of the contract, and
"(2) The contract is otherwise approved by him.
"B. No insurance contract shall contain any provision inconsistent with or contradictory to any such standard provision used or required to be used, but the Secretary of State may approve any provision which is in his opinion more favorable to the insured than the standard provision or optional standard provision otherwise required. No endorsement, rider, or other documents attached to such contract shall vary, extend, or in any respect conflict with any such standard provision, so as to make the resulting effective provision less favorable to the insured than such standard provision. * * *"
[2] G. Frank Purvis, "The Insurance Code of Louisiana", La.R.S., Introduction to Title 22, Volume 15, xxix et seq., especially page xxxiv. However, automobile liability policies are required to contain certain specified provisions or be issued subject thereto, such as those permitting the direct action.
[3] The Louisiana Insurance Rating Commission Automobile Casualty Manual for Louisiana (1953 edition), p. 18, provides, Rule 79:

"Military Posts, Camps, Cantonments or ReservationsLimited Coverage
"A policy may be written to cover a private passenger or commercial automobile owned by a civilian, officer or enlisted man in the military service who may be required by the Federal Government or camp commander to give evidence of automobile insurance for operations within the boundaries of any military post, camp, cantonment or reservation subject to the following provisions:
"(a) Coverage is to be applied only to accident which occur within the boundaries of any military post, camp, cantonment, or reservation.
"(b) This limited coverage is not available to any person required to file evidence of financial responsibility in accordance with the Certified Risks Financial Responsibility Laws Rule.
"RATEThe rate for a private passenger or commercial automobile shall be $7.00 bodily injury and $3.00 property damage, basic limits for the period of coverage."