Flora SWINNEY, Appellant,

v.

PIONEER CASUALTY CO. et al., Appellees.

No. 15867.

Court of Civil Appeals of Texas.

Dallas.

July 7, 1961.

D. J. Silman, Fort Worth, and Mullinax, Wells, Morris & Mauzy, Dallas, for appellant.

William F. Billings, Dallas, for appellees.

WILLIAMS, Justice.

Flora Swinney, as plaintiff, originally brought suit against G. J. Campbell and son, Glenn Wesley Campbell, for damages resulting when a car driven by Glenn Wesley Campbell struck Flora Swinney, a pedestrian, on July 11, 1957. In that suit Flora Swinney recovered a judgment for $4,000 and costs against both defendants, such judgment being affirmed by this Court on appeal. Campbell v. Swinney, Tex.Civ. App., 328 S.W.2d 330, err. ref. n. r. e. After execution was returned "nulla bona" Flora Swinney brought this action in the District Court against Pioneer Casualty Company seeking to recover the amount of the judgment theretofore obtained based on a liability policy which had been issued by Pioneer Casualty Company to G. J. Campbell. Recovery was also sought against George A. Alexander for alleged misrepresentation concerning the issuance of the policy in question. Plaintiff in the trial court proceeded to trial on the theory that the policy in question (a non-owner's policy) provided coverage of the accident in question. Following the introduction of testimony, the cause was adjourned to permit the filing of a trial amendment by plaintiff alleging, for the first time, waiver by

the defendant insurance company of its policy defenses and also alleging estoppel to assert said defenses. The insurance company thereupon answered such trial amendment by specifically pleading a written reservation agreement with G. J. Campbell, its insured. The trial, before the court without a jury, proceeded and resulted in a judgment for both defendants, from which judgment this appeal has been perfected.

Appellant inveighs against the judgment in six points of error. Appellant contends, and we agree, that the issues presented by such points are: (1) the sufficiency of the insurance policy to cover the collision in question; (2) the sufficiency of the evidence to show the existence of a reservation agreement; and (3) the waiver of any policy defenses by the insurance company.

The first issue goes to the heart of this case. Appellant contends that the insurance policy issued by Pioneer Casualty Company to its insured G. J. Campbell, and certified to the Department of Public Safety, became absolute in its coverage as to the accident of July 11, 1957, under Art. 6701h, § 21(f) Vernon's Ann.Civ.St. All parties agree that their rights and liabilities are governed by this statute, commonly known as the Texas Safety Responsibility Law.

The facts are without dispute that, because of prior conviction of driving while intoxicated, it was necessary for G. J. Campbell to secure a certificate of insurance for filing with the Department of Public Safety in order for him to regain his operator's license and driving privileges. The motor vehicle liability policy issued to Campbell by Pioneer Casualty Company was under the Assigned Risk Plan (§ 35) and was an operator's policy (§ 21(c) ), effective from March 8, 1957 to March 8, 1958. The policy, incorporated as a part of the record specifically designated the same as "non-owner" type of coverage and contained the Form 84 Endorsement, styled "Non-owner policy" and specifically providing therein that: "The insurance does not apply (a) to any automobile owned by

the named insured or spouse". Form SR22 known as "Texas Financial Responsibility Insurance Certificate" was filed with the Department of Public Safety by Pioneer Casualty Company which certified the policy as a "non-owner" type of coverage. The facts are further undisputed that at the time of the acquisition of this policy of insurance Campbell did not own an automobile but that later, on or about July 5, 1957, he purchased the car which was later involved in the accident on July 11, 1957. At the time of the accident the automobile was not driven by Campbell, but was being driven by his son. The insurance company received notice of the accident a few days after the occasion of the collision, at which time it was advised, for the first time, that Campbell had purchased the automobile in question.

There is evidence to the effect that on July 16, 1957 the representatives of Pioneer Casualty Company secured a written statement from Campbell relating to the facts of the accident and on the same date entered into a reservation of rights agreement with Campbell under the terms of which agreement the insurance company agreed to investigate and defend the litigation without waiving any of its rights under its policy of insurance. The facts concerning the execution of this reservation of rights agreement are in conflict and will be discussed further under another point.

 The point contending that the policy in question, being a certified policy under the statutes, is absolute and cannot be contested has been decided adversely to appellant's contention by this Court in State Farm Mutual Automobile Insurance Company v. Chatham, 318 S.W.2d 684, 688. The facts in the Chatham case are strikingly similar to those in the instant appeal. Associate Justice Young of this Court, in a thorough and comprehensive opinion directed attention to the fact that proof of financial responsibility is satisfied under the requirements of Art. 6701h by issu-

ance of two kinds of liability policies, either "owners" or "operator's" policy. In the first instance the coverage applies to all motor vehicles owned by the insured. In the second instance coverage is afforded for damages arising out of the use by the insured of any motor vehicle not owned by him. Both in § 19(a) and § 21(a) language is utilized to definitely demonstrate that one may satisfy the demands of the statutes by certifying one or the other of the two types of coverage. Art. 6701h, § 21(f) provides that the liability of the insurance company with respect to the insurance required by this Act shall become absolute whenever injury or damage *covered by said motor vehicle liability policy occurs*, and that no violation of said policy shall defeat or void said policy. (Emphasis supplied.) This section of the statute does not enlarge upon the coverage of the policy to provide coverage of the accident of July 11, 1957 when, in truth and in fact, under the terms of such non-owner's policy no coverage existed. Such quoted section of the statute merely deprives the insurance company of certain defenses to liability which arise from agreement between the insurance company and the insured after the occurrence of the injury or damage; a statement made by the insured or on his behalf; or a violation of the insured of said policy. This is as far as the statute goes and no further. No effort is made by the Legislature to redraft or write a new insurance policy which was not originally contemplated by the insurance company and its insured. We will not burden this opinion with a restatement of the findings in the Chatham case, supra, but content ourselves with adopting the same completely and as being controlling in this appeal. We held there that since the policy in question was a "non-owner's" policy and since the evidence demonstrated that the insured was driving a car owned by him at the time of the accident that there was no coverage and liability was not absolute under the statute. So are the facts here.

The policy in question was a "non-owner's" policy with a specific "non-owner's" policy endorsement. The car was owned by G. J. Campbell and driven by his son at the time of the accident. There was no coverage under the policy. There being no basic coverage the insurance company was clearly within its rights to deny liability as to *coverage but not as to policy defenses thereunder.* (Emphasis supplied.) Appellant's contention in regard is overruled.

■ Appellant contends that since the insurance company was made aware of the fact that he owned the automobile within 30 days after he acquired the same that coverage was afforded automatically under the terms of the "non-owner's" policy. As reflected above, Campbell acquired the automobile a short time before the accident and did not notify the insurance company of his acquisition until notice of the accident was given a few days later. Appellant pleads Section IV(a) (4) of the insuring agreement of the policy which provides that an automobile is covered if it replaces an automobile owned by either insured or his spouse and covered by this policy, or the company insures all automobiles owned by the named insured. The identical question was presented to this Court in State Farm Mutual Automobile Insurance Co. v. Chatham, supra, and decided adversely to appellant's contention. Judge Young, in disposing of the point said: "Section IVa, (4) of this Texas Standard policy obviously relates to an 'owner's' policy; the newly acquired automobile to be in replacement of the automobile described in the policy. Chatham's policy was of the operator's type, with liability limited to 'damages arising out of use by him of any motor vehicle not owned by him.'" In other words, the very language of the policy itself refutes appellant's point since the acquired automobile was not to replace one previously owned by him and covered by the original policy nor was it one covering all automobiles owned by Campbell.

■ Appellant next contends that the insurance company waived its defenses of the reservation agreement alleged to have been made between Campbell and the insurance company by not pleading the same or raising the issue prior to the time it was raised in the trial court. By letter of August 28, 1957 Pioneer Casualty Company advised the attorney for the appellant in this case that the company denied coverage because the policy in question did not cover the owned car involved in this accident. On July 16, 1957 the insurance company had entered into a non-waiver or reservation rights agreement with Campbell. After suit was filed the insurance company furnished Campbell a defense, including all available appeals. The insurance company was not a party to the original action and there was no occasion to assert policy defenses during the trial of that case. The first time that the question of waiver and estoppel was raised was by the filing of a trial amendment during the trial of the instant case. Immediately after the filing of this trial amendment the insurance company pled specifically the terms and provisions of the reservation agreement. It is our opinion that the insurance company, by its acts and conduct as shown, did not waive its rights to assert the defenses presented. Nor was there any estoppel. Prior to the filing of the trial amendment there was no occasion or duty on the part of the insurance company to raise the issue which had not, up to that time, been presented. That the insurance company had the right to proceed, without prejudice, with the defense of the original case, having secured a reservation rights agreement, has been decided in the case of Utilities Insurance Company v. Montgomery, 134 Tex. 640, 138 S.W.2d 1062, 1065. In that case the insurance company, prior to the original trial, had denied coverage and had entered into a reservation agreement with its insured similar to the one on the instant appeal. The question of waiver and estoppel were there presented and overruled by the Commission of Appeals, the court pointing out that the insur-

ance company did not voluntarily surrender any known right but, on the contrary, it expressly stipulated in writing against such surrender of any of its rights. The court said it was well recognized that "under no sound principle of law could the non-waiver of agreement in this case be disregarded and a liability never assumed by the Insurance Company be thereby imposed upon it." Appellant's point is therefore overruled.

In her remaining points appellant earnestly contends that the finding of the trial court that the reservation agreement as executed by G. J. Campbell and Pioneer Casualty Company is without support in the evidence and is so against the great weight and preponderance of the evidence as to be clearly wrong. In considering these points we are governed by the fundamental and well-established rule of law that where no findings of fact and conclusions of law are requested of or filed by the trial court, the judgment implies all necessary fact findings and support of the judgment. In seeking to determine whether there is any evidence to support the implied findings of fact instant thereto it is proper to consider all of that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory to its nature. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609; 33 A.L.R.2d 1114. The instrument in question is designated "defendant's Exhibit 2" and appears to be a printed form entitled "Reservation Agreement" and bears the signature of G. J. Campbell and Pioneer Casualty Company by R. S. Davis. The signature of Campbell is witnessed by F. S. Stradley and the signature of Davis is witnessed by Betty W. Penner. When the instrument was offered in evidence Campbell, who may certainly be classified as an interested witness, testified that he did not sign the instrument but did admit signing a statement as to how the accident occurred, such statement appearing in the record as defendant's Exhibit 1,

but not being received in evidence. Stradley, an insurance adjuster, testified that he investigated the collision and presented the agreement to Campbell for his signature. Stradley identified his signature as a witness to Campbell's signature and said that he would not have signed the instrument unless Campbell had signed it in his presence; that he was positive he witnessed Campbell's signature because his, Stradley's signature was to witness Campbell's signature; that he, Stradley, had never placed a signature on a document as a witness when the document was not signed by the party whose signature he was supposed to witness; that he had never deviated from this practice in his experience as an adjuster. The objection made, concerning mutuality or legal consideration, was that Davis was not shown to be acting in any capacity or had any authority to sign on behalf of Pioneer. Davis testified that he signed on behalf of Pioneer; that he had been authorized by the company to sign reservation agreements; that he had signed several hundred reservation agreements on behalf of Pioneer, both before and after this occasion; that he had represented Pioneer for 8 or 9 years; that he knew the agreement had been forwarded to Pioneer Casualty Company after its execution. In the light of this testimony, and bearing in mind that the trial judge was in a better position to evaluate the testimony, we cannot say that there was no evidence to support the introduction of Exhibit 2. Neither can we say, based upon a review of all the testimony, that the testimony concerning the admissibility of the instrument in question is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Appellant's remaining points, are, therefore overruled.

Having considered all of appellant's points, and finding them to be without merit, they are all overruled and the judgment of the trial court is affirmed.