**GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellant,**

v.

**Ronald Douglas EDELMAN et al., Appellees.**

**No. 7710.**

Court of Civil Appeals of Texas, Beaumont.

May 29, 1975.

Rehearing Denied July 10, 1975.

John J. McKay, Austin, for appellant.

J. D. Maroney, Ras Redwine, Harley R. Clark, Jr., Donald W. Raven, Austin, for appellees.

KEITH, Justice.

The appeal is from a declaratory judgment finding that plaintiff, Government Employees Insurance Company ("GEICO"), was obligated to defend the driver of an automobile owned by the son of one of its insureds. A short statement is necessary to place the questions in proper perspective.

### 1. *Statement*

A. H. Edburg, Jr. ("Edburg") owned two Oldsmobile cars while his 19-year-old son, Andrew Edburg ("Andy"), owned and had legal title to a 1970 Chevrolet Camaro. All three cars were covered in a single Texas Standard Family Automobile policy issued to Edburg by GEICO. Andy was a resident of his father's household at all time material to this suit.

On December 26, 1970, Andy was a passenger in his automobile which was then being driven by his 17-year-old friend, Ronnie Edelman ("Ronnie"), when it was in a collision with a car being operated by Joseph Francis Perrin and occupied by his wife and daughter. Each of the Perrins received bodily injury and subsequently instituted suit in Williamson County against Edburg and Andy for their damages. Ronnie was described as the driver of Andy's car at the time of the accident. GEICO sought a declaration in this suit that it was not obligated to defend Ronnie or pay any judgment rendered against him in favor of the Perrins arising out of the accident. Trial was to the court which denied GEICO all relief it sought.

Edburg had signed Andy's note at the bank when the car was purchased and allowed Andy to use his gasoline charge card in operating the car. Andy, however, was to be responsible for the payments on the car and for its repairs. Edburg testified that Andy had the right to use the car "[w]ithin our family policy of who drives cars," the policy being that "no one outside of our immediate family should drive cars that are covered by our insurance." He said he told Andy that he "did not want someone driving the family automobiles outside of the family circle." He knew of only two instances where someone other than Andy had driven: a Gene Stieler, an adult acquaintance of Edburg had driven it once in his presence to test the old fashioned stick shift and manual clutch. Stieler was a good driver and Edburg had no objection to his use of the car.

The other instance was when he saw a youth, James Turpin, driving Andy's car.

He asked Andy about this and said, "Again I reiterated the policy of not letting others outside the family drive the cars."

Andy said that he had let three boys drive his Camaro: a boy named Gilbert, the Turpin instance noted above, and Ronnie on the occasion in question. He stated that his father "specifically objected to anyone else driving my car." Other than the Turpin instance, when Edburg saw the outsider driving Andy's car, no knowledge of the violation of his instructions was brought home to Edburg by any other testimony.

The trial court filed extensive findings of fact among which were these: Ronnie had permission from Andy to drive at the time and on the occasion in question; the Perrins had alleged that at the time of the accident Ronnie and Andy were on a joint venture; the Perrins had alleged that Andy had negligently entrusted the car to Ronnie; the Perrins had alleged that Ronnie's negligence was a proximate cause of the collision and their injuries and damages; Andy was a resident of the same household as the named insured, Edburg; "[t]here was implied permission on the part of the named insured (Mr. A. H. Edburg, Jr.) to Andrew H. Edburg [Andy] for others to operate the car in question"; there was implied permission for Ronnie to operate the car at the time and on the occasion in question and his actual operation was within the scope of his permission.

## 2. *Opinion*

We quote the definitions applicable to Part I of the policy—relating to liability:

"Persons Insured: The following are insureds under Part I:

(a) with respect to the owned automobile,

(1) the named insured and any resident of the same household,

(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a)(1) or (2) above."

The trial court filed three conclusions of law stating in essence his view of the law applicable to the facts set out earlier and these are quoted in the margin.[1]

GEICO does not challenge the determination that it is obligated to defend Andy since he was an insured under Part I(a)(1) of the policy, having been a resident of the insured's (Edburg's) household at the time of the accident. Thus, Conclusion of Law No. One requires no further discussion.

1. "1. Andrew H. Edburg is an insured under Part I(a)(1) of the policy in question since he was a resident of the named insured's household at the time and on the occasion in question.

"2. In the original case, styled Joseph Frances Perrin, et al. vs. Ronald Douglas Edelman and numbered 13,975 in the 26th District Court of Williamson County, Texas, the Perrins have alleged acts or omissions (negligent entrustment) on the part of Andrew H. Edburg, an insured. Under Part I(a)(3) of the policy in question, coverage is afforded to any other person (Edelman—driver) but only with respect to his liability because of acts or omissions (pled by the Perrins against Andrew H. Edburg in the original case) of an insured (Andrew H. Ed-

burg) under Part I(a)(1). Under Texas law, insurance companies have a duty to defend based on the allegations of the pleadings even if untrue. The policy in question so promises in Coverage A & B. Therefore, Government Employees Insurance Company has a duty to defend Ronald D. Edelman under Part I(a)(3) of the policy in question, and Ronald D. Edelman is an insured under that Part I(a)(3) with respect to the occurrence in question.

"3. Under Texas law, implied permission by a named insured creates coverage for the user. Therefore, Government Employees Insurance Company has a duty to defend Ronald D. Edelman under Part I(a)(2) of the policy in question, and Ronald D. Edelman is an insured under that Part I(a)(2) with respect to the occurrence in question."

## A. *Actual permission*

In his first finding of fact, the trial court found that Ronnie (the driver) had permission from Andy (the owner) to drive the car at the time and on the occasion in question. This finding, while absolutely true and undisputed, is not determinative of any question presented by this record.

■ The general rule is that permission cannot be given by one who is not a named insured, even though he is the owner of the vehicle. *45 C.J.S. Insurance § 829, at 900 (1946); 7 Blashfield, Automobile Law and Practice § 315.9 at 600 (1966); 7 Appleman, Insurance Law and Practice § 4358 at 264 (1942).*

There is no pretense that Ronnie had actual permission from Edburg to drive the car at the time and place in question.

## B. *Joint venture*

■■ In his second finding of fact, the trial court found that the Perrins had charged in their Williamson County damage suit that, at the time and place and on the occasion in question, Ronnie and Andy were on a joint venture.[2] Again, this finding is upon undisputed evidence; but, like the first, is legally immaterial. Since the decision of *Shoemaker v. Estate of Whistler*, 513 S.W.2d 10 (Tex.1974), the doctrine of joint venture can be invoked only by showing of a "business or pecuniary purpose" in the venture. These two boys, under our unchallenged record, were out joy riding and business or pecuniary purpose was the one thing farthest from their minds.

■ Further, under *Kennedy v. Kennedy*, 505 S.W.2d 393, 395 (Tex.Civ.App. —Austin 1974, no writ), and cases cited,

"[the] negligence of one member of a joint enterprise may not be imputed to another member of the enterprise, if a minor."

## C. *Implied permission*

Findings three, four, six, and seven are all tied to and form an integral part of the trial court's finding that Ronnie had implied permission to drive Andy's car at the time and on the occasion in question.[3] We summarize these findings: No. 3, the Perrins had alleged that Andy negligently entrusted the car to Ronnie; No. 4, the Perrins charged that the negligence of Ronnie was a proximate cause of the collision and their injuries and damages; No. 6, there was implied permission on the part of the named insured, Edburg, to Andy for others to operate the car; and No. 7, there was implied permission on the part of the named insured for Ronnie to operate the car "at the time and on the occasion in question, and Ronald D. Edelman's actual operation thereof was within the scope of such permission."

In *Royal Indemnity Company v. H. E. Abbott & Sons, Inc.*, 399 S.W.2d 343, 345 (Tex.1966), the Court addressed itself to the issue of implied permission, saying:

"While express permission must be affirmatively stated, implied permission may be inferred from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent. It is usually shown by usage and practice of the parties over a period of time preceding the occasion on which the automobile was being used. 7 Appleman, Insurance Law and Practice, § 4365."[4]

---

2. The Perrins alleged that Andy and Ronnie were "on a joint venture, as that term is used in law, and they are jointly and severally responsible to plaintiffs for their injuries and damages."

3. Number five: Andy was a resident of Edburg's household at the time of the accident is undisputed and forms no basis for the finding of implied permission.

4. In citing *Appleman § 4365*, our Supreme Court effectively dissociated itself from the so-called "Hell or High Water Rule" discussed in the next section of *Appleman § 4366*, which reaches a different result.

The general rule with reference to a second permittee is set forth in *Couch on Insurance, 2d Ed. 1964, § 45:409 at 406*:

"If the owner of the car expressly forbids the permittee to lend his car to another, but the permittee nevertheless allows a second permittee to drive the car in violation of the named insured's express orders, the insurer is not liable while the second permittee is driving, on the theory that a prohibition against delegation is a restriction upon the use of the vehicle. Otherwise stated, where the insured expressly prohibits the operation of a vehicle by any person other than the permittee, a second permittee does not have permission and is not an omnibus insured. Even where the permittee has exclusive use of the car which was bought for him by the named insured, the latter may expressly forbid the use of the car by anyone else and such prohibition will preclude recovery by one who borrowed the car from the permittee."

There is no evidence in this record which would lend any support to a finding that there was a "mutual acquiescence or lack of objection signifying consent" on the part of Edburg. Indeed, insofar as is shown by this record, Edburg never even knew that Ronnie had ever driven the vehicle before the occasion of the accident. Ronnie did not succeed in showing that Edburg had any knowledge of his operation of the vehicle on any prior occasion, much less that implied permission had been "shown by usage and practice of the parties [Edburg and Ronnie] over a period of time preceding the occasion * * *."

■ Edburg was, of course, an interested party and the trial court was not required to accept his testimony as binding upon the court. But, as was said in *Safeway Stores, Inc. v. White*, 162 Tex. 473, 348 S.W.2d 162, 165 (1961), "his testimony in that respect is not evidence that the opposite of what he said is true."

■ The finding that Ronnie had implied permission to operate the car at the time and place of the accident is without support in the evidence. So holding, after having carefully reviewed the evidence most favorable to the finding, we sustain GEICO's fourth point of error quoted in the margin.[5] See, *Tristan v. Government Employees Insurance Co.*, 489 S.W.2d 365, 367 (Tex.Civ. App.—San Antonio 1972, writ ref'd n. r. e.), and authorities therein cited.

Having found error requiring the reversal of the judgment of the trial court, we now render the judgment which should have been rendered in the court below. The judgment of the trial court is reversed and judgment now rendered that GEICO is not obligated (by the terms of the policy involved herein) to defend Ronnie in the Williamson County suit of the Perrins.

Reversed and rendered.

---

5. "There is no evidence to sustain the Trial Court's findings that the named insured, A. H. Edburg, Jr. gave his implied permission to Andrew H. Edburg (his son) for others to operate the car in question and that A. D. Edburg, Jr. gave his implied permission to Ronald Edelman to operate the car."